# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

_____

No. 11-1783

_____

**FILED**

**June 5, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

ROCCO S. FUCILLO, Secretary, West Virginia
Department of Health and Human Resources;
WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN
RESOURCES; WEST VIRGINIA SUPPORT ENFORCEMENT
COMMISSION; GARRETT M. JACOBS, Commissioner,
West Virginia Bureau for Child Support Enforcement;
WEST VIRGINIA BUREAU FOR CHILD SUPPORT
ENFORCEMENT; and POLICY STUDIES, INC.,
a Colorado Corporation, authorized to do business
in West Virginia,
Defendants Below. Petitioners

V.

CYNTHIA KERNER, guardian, on behalf of J.B. and R.B.;
LORI C., guardian, on behalf of B.C.;
ROBIN DANBERRY, guardian, on behalf of B.B.;
KATHY COOPER, guardian, on behalf of L.D. and C.D.;
CECILIA NASH, guardian, on behalf of C.C. and J.C.;
LISA ROTH, guardian, on behalf of A.C. and A.C.;
and on behalf of all other children similarly situated,
Plaintiffs Below, Respondents

Appeal from the Circuit Court of Kanawha County
The Honorable Paul Zakaib, Jr., Judge
Civil Action No. 11-C-666

REVERSED AND REMANDED WITH DIRECTIONS

Submitted: April 17, 2013
Filed:  June 5, 2013

Edgar Allen Poe, Jr., Esq.
Pullin, Fowler, Flanagan,
Brown & Poe PLLC
Charleston, West Virginia
Counsel for DHHR Petitioners

Ancil G. Ramey, Esq.
Hannah C. Ramey, Esq.
Steptoe & Johnson PLLC
Huntington, West Virginia
Counsel for Petitioner PSI

Charles E. Webb, Esq.
The Webb Law Firm, PLLC
Lonnie C. Simmons, Esq.
Katherine R. Snow, Esq.
DiTrapano, Barrett &
DiPiero, PLLC
Charleston, West Virginia
Counsel for Respondents

JUSTICE WORKMAN delivered the Opinion of the Court.

1.     "'Ordinarily the denial of a motion for failure to state a claim upon which relief can be granted made pursuant to *West Virginia Rules of Civil Procedure* 12(b)(6) is interlocutory and is, therefore, not immediately appealable.'  Syllabus Point 2, *State ex rel. Arrow Concrete Co. v. Hill*, 194 W. Va. 239, 460 S.E.2d 54 (1995)."  Syl. Pt. 1, *Jarvis v. W. Va.  State Police*, 227 W. Va. 472, 711 S.E.2d 542 (2010).

2.     "'The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Syllabus Point 3, *Chapman v. Kane Transfer Company*, 160 W. Va. 530, 236 S.E.2d 207 (1977) quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957)."  Syl. Pt. 2, *Cantley v. Lincoln Cnty. Com'n*, 221 W. Va. 468, 655 S.E.2d 490 (2007).

3.     "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."  Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975).

4.     "The following is the appropriate test to determine when a State statute gives rise by implication to a private cause of action: (1) the plaintiff must be a member of the class for whose benefit the statute was enacted; (2) consideration must be given to legislative intent,

i

express or implied, to determine whether a private cause of action was intended; (3) an analysis must be made of whether a private cause of action is consistent with the underlying purposes of the legislative scheme; and (4) such private cause of action must not intrude into an area delegated exclusively to the federal government." Syl. Pt. 1, *Hurley v. Allied Chem. Corp.*, 164 W. Va. 268, 262 S.E.2d 757 (1980).

5.     "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. Pt. 2, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968).

6.    Child support obligees, either on their own behalf or on behalf of their children, do not have a private cause of action under the provisions of West Virginia Code § 48-19-103(f) (2009) against state entities or their contractors for damages arising from the failure of such entities or contractors to reduce the obligees' respective support arrearages to judgment and/or to renew such judgments, thus causing the obligees' claims to become time-barred.

WORKMAN, J.:

This is an appeal from an order entered on November 28, 2011, by the Circuit Court

of Kanawha County, denying the petitioners' Rule 12(b)(6) motions to dismiss. The

underlying suit was brought by the respondents, plaintiffs below, six child support obligees[1]

suing on behalf of their respective children,[2] who allege that the petitioners failed to reduce

their respective support arrearages to judgment and/or to renew such judgments, thus causing

the obligees' claims to become time-barred. The respondents' complaint sets forth five

causes of action, all sounding in tort: breach of statutory duty, negligence, breach of fiduciary

duty, breach of trust, and fraud.

The institutional petitioners, defendants below, are the West Virginia Department of

Health and Human Resources (hereinafter "DHHR"), the West Virginia Support

Enforcement Commission (hereinafter "SEC"), the West Virginia Bureau for Child Support

[1]Although the complaint indicates that the six respondents intend to seek class certification, they have not yet done so and therefore the circuit court did not rule on whether class certification would be proper under West Virginia Rule of Civil Procedure 23.

[2]From the appendix record submitted to this Court, we cannot discern the basis upon which the respondents purport to sue on behalf of their children, inasmuch as all of the children, with the possible exception of respondent Lori C.'s child, B.C., had reached the age of majority prior to the filing of the complaint. See *infra* note 13. Since this issue was neither raised in the proceedings below nor addressed in this appeal, however, this Court will not address it.

With respect to respondent Lori C. and her child, B.C., who may be a minor, "[w]e follow our past practice in juvenile and domestic relations cases which involve sensitive facts and do not utilize the last names of the parties" *State ex rel. W. Va. Dept. Of Human Servs. v. Cheryl M.*, 177 W. Va. 688, 689 n.1, 356 S.E.2d 181, 182 n.1 (1987) (citations omitted).

1

Enforcement (hereinafter "BCSE"), and Policy Studies, Inc. (hereinafter "PSI"). The individual petitioners, defendants below, who are sued in their official capacities, are the Secretary of DHHR[3] and the Commissioner of BCSE

In syllabus point one of *Jarvis v. West Virginia State Police*, 227 W. Va. 472, 711 S.E.2d 542 (2010), this Court held that

> '[o]rdinarily the denial of a motion for failure to state a claim upon which relief can be granted made pursuant to *West Virginia Rules of Civil Procedure* 12(b)(6) is interlocutory and is, therefore, not immediately appealable.' Syllabus Point 2, *State ex rel. Arrow Concrete Co. v. Hill*, 194 W. Va. 239, 460 S.E.2d 54 (1995).

However, we further held in *Jarvis* that "[b]ecause the instant order denying a motion to dismiss is an interlocutory order that is predicated in part on qualified immunity, we find that the order is subject to immediate appeal under our holding in *Robinson* [*v. Pack*, 223 W. Va. 828, 679 S.E.2d 660 (2009)]." *Jarvis*, 227 W. Va. at 476, 711 S.E.2d at 546. Because the order at issue in this case is an interlocutory order predicated in part on qualified immunity, we find that the order is subject to immediate appeal under *Robinson* and *Jarvis*.

Upon careful review of the parties' briefs and oral arguments, the appendix record,

---

[3]Rocco S. Fucillo, successor to Michael J. Lewis, is now the Secretary of the Department of Health and Human Resources and is automatically substituted as a party per West Virginia Rules of Appellate Procedure 41(c).

2

and our applicable precedents, we conclude that the respondents do not have a private cause of action under the statutes governing collection of child support by the BCSE. We therefore reverse the circuit court's order and remand this case for entry of an order granting the petitioners' motions to dismiss.

## I. FACTUAL AND PROCEDURAL HISTORY

On April 25, 2011, the respondents, six child support obligees, filed a complaint alleging that as a result of the petitioners' failure to perform duties imposed on them by law, the respondents' right to collect child support arrearages owed by their respective obligors was barred by the statute of limitations. The petitioners filed motions to dismiss pursuant to West Virginia Rules of Civil Procedure 12(b)(6), raising multiple grounds including, inter alia, that the respondents did not have a private cause of action under the statutes governing child support enforcement. The petitioners also raised the defenses of prosecutorial immunity, qualified immunity, and the public duty doctrine.

On November 28, 2011, the circuit court entered a comprehensive order ruling on all issues raised by the petitioners in their respective motions to dismiss. First, based upon the allegations in the complaint, the circuit court made the following findings of fact, which this Court adopts for purposes of this appeal:[4]

---

[4]Because this is an appeal from the circuit court's denial of petitioners' motions to dismiss, the factual basis for this Court's review is confined to the allegations in the

3

1. Each Plaintiff class representative [now, collectively, respondents] is a custodial parent of a child or children, who is owed child support from the noncustodial parent.

2. In each case, an order was entered requiring the noncustodial parent to pay a certain amount of child support each month.

3. Defendants West Virginia Department of Health and Human Resources, Bureau for Child Support Enforcement, and Policy Studies, Inc. [now, collectively, petitioners], filed a motion in each case on behalf of the children seeking to determine the amount of child support in arrears.

4. However, each of these motions were filed subsequent to the West Virginia Supreme Court's decisions in *Shaffer v. Stanley*, 215 W. Va. 58, 593 S.E.2d 629 (2003), and its progeny. In those cases, the West Virginia Supreme Court found that where a child support judgment had not been preserved, the State Defendants and PSI could not collect child support in arrears that fell outside the statute of limitations.

5. In *Shaffer*, the West Virginia Supreme court ordered the State Defendants to repay the noncustodial parents any money withheld that was barred by the statute of limitations.

6. In each case, the child support order was not preserved, and, pursuant to *Shaffer*, significant portions of the child support payments in arrears were barred by the statute of limitations. The individual amounts lost by Plaintiffs range from approximately $2,593.89 to $57,728.00. *See* Compl. at 9-16. The class representatives in total allege $157,070.42 was lost in their cases. *Id*.

Thereafter, the circuit court held, in its conclusions of law, that further factual

---

complaint. *Cf. Riffle v. C. J. Hughes Const. Co.*, 226 W. Va. 581, 703 S.E.2d 552 (2010) (consideration of materials outside the complaint requires conversion of 12(b)(6) motion to summary judgment motion).

development was necessary to determine whether the respondents have a private cause of action under the statutes governing child support enforcement. The court further held that petitioner Policy Studies, Inc., a private corporation, is not entitled to any governmental immunities; that prosecutorial immunity does not apply to either the state actors or to PSI; that further factual development is required before the applicability of qualified immunity to the state actors can be finally determined; and that further factual development is required before the applicability of the public duty doctrine to the state actors can be finally determined. This appeal followed.

## II. STANDARD OF REVIEW

Inasmuch as this case was decided on motions to dismiss, West Virginia Rules of Civil Procedure 12(b)(6), we review this matter de novo and follow our long-established rule that "[f]or purposes of the motion to dismiss, the complaint is construed in the light most favorable to plaintiff, and its allegations are to be taken as true." *Cantley v. Lincoln Cnty. Com'n*, 221 W. Va. 468, 470, 655 S.E.2d 490, 492 (2007) (citing *John W. Lodge Distrib. Co. v. Texaco, Inc*., 161 W. Va. 603, 605, 245 SE.2d 157, 158 (1978); *see also Jarvis*, 227 W. Va. at 475-76, 711 S.E.2d at 546 (citing Syl. Pt. 4, *Ewing v. Bd. of Educ*., 202 W. Va. 228, 503 S.E.2d 541 (1998) ("When a party, as part of an appeal from a final judgment, assigns as error a circuit court's denial of a motion to dismiss, the circuit court's disposition of the motion to dismiss will be reviewed *de novo*.").

Further, this Court has held that

> '[t]he trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Syllabus Point 3, *Chapman v. Kane Transfer Company*, 160 W. Va. 530, 236 S.E.2d 207 (1977) quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957).

Syl. Pt. 2, *Cantley*, 221 W. Va. at 469, 655 S.E.2d at 491; *accord*, Syl. Pt. 2, *Holbrook v. Holbrook*, 196 W. Va. 720, 474 S.E.2d 900 (1996).

## III. DISCUSSION

Respondents' allegations are based on the petitioners' alleged failure to discharge the duties statutorily assigned to them by the West Virginia Legislature, specifically, their duty to pursue enforcement of child support orders under West Virginia Code § 48-19-103(f) (2009). That subsection provides:

> (f) The Bureau for Child Support Enforcement attorney shall pursue the enforcement of support orders through the withholding from income of amounts payable as support:
>
> (1) Without the necessity of an application from the obligee in the case of a support obligation owed to an obligee to whom services are already being provided under the provisions of this chapter; and
>
> (2) On the basis of an application for services in the case of any other support obligation arising from a support order entered by a court of competent jurisdiction.

6

Inasmuch as this Court is reviewing the circuit court's denial of a motion to dismiss, we assume that the allegations of the complaint are true and that the petitioners negligently failed to pursue enforcement of the respondents' respective support orders, thereby causing the respondents' claims to be barred by the statute of limitations. With respect to respondents Lori C. and Kathy Cooper, whose child support actions were filed in Kanawha County, West Virginia, we further assume that the petitioners' duty under West Virginia Code § 48-19-103(f) was contracted[5] to petitioner PSI,[6] which negligently failed to pursue enforcement. The issue before us is whether the respondents have a private cause of action under West Virginia Code § 48-19-103(f), the alleged violation of which forms the basis for their claims.

In syllabus point one of *Hurley v. Allied Chemical Corp*oration, 164 W. Va. 268, 262 S.E.2d 757 (1980), this Court held that

---

[5]West Virginia Code §§ 48-18-105 (5) & (7) (2009) authorize BCSE to contract for professional services to obtain and enforce support orders, and to contract for collection services to collect and disburse amounts payable as support. West Virginia Code §§ 48-18-105 (6) & (8) require BCSE to ensure that the activities of a subcontractor are carried out in a manner consistent with attorneys' professional responsibilities and/or the provisions of Chapter 48.

[6]Petitioner PSI is a private corporation incorporated in Colorado, authorized to do business in West Virginia and having its principal office in Charleston, West Virginia. Petitioner PSI entered into a contract with the State of West Virginia in 1966 whereby it prosecutes all aspects of child support enforcement in Kanawha County on behalf of BCSE. According to the allegations in the complaint, the support actions of respondents Lori C. and Cooper were filed in Kanawha County.

> [t]he following is the appropriate test to determine when a State statute gives rise by implication to a private cause of action: (1) the plaintiff must be a member of the class for whose benefit the statute was enacted; (2) consideration must be given to legislative intent, express or implied, to determine whether a private cause of action was intended; (3) an analysis must be made of whether a private cause of action is consistent with the underlying purposes of the legislative scheme; and (4) such private cause of action must not intrude into an area delegated exclusively to the federal government.

In the thirty-three years since *Hurley* was decided, this Court has continued to utilize the four-part *Hurley* test as the yardstick for determining whether a statute gives rise to a private cause of action. Although all prongs of the test have weight and none, standing alone, is determinative, our cases demonstrate that legislative intent is the polar star in determining the existence of a private cause of action. *Compare Hill v. Stowers*, 224 W. Va. 51, 680 S.E.2d 66 (2009) (no private cause of action under W. Va. Code §§ 3-8-11, 3-9-12 or 3-9-13, for one who alleges that he lost election as the result of unlawful vote-buying); *Yourtee v. Hubbard*, 196 W. Va. 683, 474 S.E.2d 613 (1996) (no private cause of action under unattended motor vehicle statute, W. Va. Code § 17C-14-1, for one who steals automobile); *Reed v. Phillips*, 192 W. Va. 392, 452 S.E.2d 708 (1994) (no private cause of action under W. Va. Code § 29-3-16a(g) for plaintiff whose decedent died in fire as the result of landlord's failure to install smoke detectors, although violation of statute may be prima facie evidence of negligence); *Adams v. Nissan Motor Corp. in U.S.A.*, 182 W. Va. 234, 387 S.E.2d 288 (1989) (no private cause of action under W. Va. Code § 46A-6A-8, for consumer seeking to act as private attorney general); *and Machinery Hauling v. Steel of W. Va.*, 181

8

W. Va. 694, 384 S.E.2d 139 (1989) (no private cause of action under W. Va. Code § 61-2-13, criminal extortion statute, for one alleging threats to sever business relations unless payment made for defective product); *with Barr v. NCB Mgmt. Serv., Inc.*, 227 W. Va. 507, 711 S.E.2d 577 (2011) (private cause of action exists under W. Va. Code § 46A-5-101(1) for consumer who seeks to sue professional debt collector for engaging in debt collection practices prohibited by the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101); *Shaffer v. Acme Limestone Co.*, 206 W. Va. 333, 524 S.E.2d 688 (1999) (private cause of action exists under W. Va. Code § 17C-17-9(b) for plaintiff whose decedent was killed in accident with overloaded truck); *and Jenkins v. J.C. Penney Cas. Ins. Co.*, 167 W. Va. 597, 280 S.E.2d (1981) (cause of action may exist under unfair settlement practice provisions of W. Va. Code § 33-11-4(9)),[7] *rev'd on other grounds, State ex rel. State Farm Fire & Cas. Co. v. Madden*, 192 W. Va. 155, 451 S.E.2d 721 (1994).

Most recently, in *Durham v. Jenkins*, 229 W. Va. 669, __, 735 S.E.2d 266, 268 (2012), this Court concluded that West Virginia Code § 19-20-20, governing the ownership of vicious, dangerous dogs, does not provide a private cause of action because its language "evinces the Legislature's intent that [the statute] is entirely criminal in nature[.]" We distinguished West Virginia Code § 19-20-18, governing the ownership of dogs that "ha[ve] been worrying, wounding, chasing or killing any [livestock]," on the ground that in the latter

---

[7]This Court's holding in *J.C. Penney* was abrogated in 2005 by the Legislature's enactment of West Virginia Code § 33-11-4a (2011).

statute, the Legislature specifically provided a civil remedy for the owner of the livestock.

299 W. Va. at __, 735 S.E.2d at 270. We concluded in *Durham* that

> The Legislature could have extended § 19-20-18 to apply to a case such as that before us. It did not, however. While we may not disagree with the circuit court from a personal standpoint,[8] we are obliged to give effect to these statutory sections as they are written, not as we might have preferred they be written.

*Id*.

Although *Durham* was decided over a strong dissent, the reasoning of the dissenting justice provides no support for the respondents' arguments in the instant case. As noted, the respondents seek to have this Court find that there is a private cause of action against the State for compensatory and punitive damages embedded within the text of our child support enforcement laws, and/or supported by an expression of legislative intent. In *Durham*, as explained in the dissent, the respondents, plaintiffs below, were seeking nothing more than the destruction of a vicious dog that had badly injured their child; they "did not seek to pin 'liability' on petitioners by virtue of 'violation of statute' for purposes of seeking money damages[.]" *Id*. at __, 735 S.E.2d at 271 (Workman, J., dissenting). In this regard,

> [t]his is a significant distinction because ordinarily, it is when this statute is utilized to form the basis for an action for damages that the analysis of whether the statute supports such an action

---

[8]The circuit court had concluded that "[c]ertainly a parent of an injured child is entitled to the same procedural protections and opportunity to request the destruction of a dangerous dog as are afforded the owner of a dead sheep." *Durham*, 229 W. Va. at __, 735 S.E.2d at 270.

10

is undertaken: 'Whenever a violation of a statute is the centerpiece of a *theory of liability*, the question arises whether the statute creates an implied private cause of action.'

*Id.* (citing *Yourtee*, 196 W. Va. at 687-88, 474 S.E.2d at 618).

With our precedents in mind, we turn to the instant case and examine West Virginia Code § 48-19-103(f) under the test established in *Hurley*.

With respect to the first prong of the *Hurley* test, the Legislature has indicated that the express purposes of Article 19, Chapter 48 of the West Virginia Code are

> (2)   [t]o ensure that procedures followed by the Bureau for Child Support Enforcement attorney will protect the best interests of children in domestic relations matters; and
>
> (3)   [t]o compel the enforcement of support orders, thereby ensuring that persons legally responsible for the care and support of children assume their legal obligations and reduce the financial cost to this State of providing public assistance funds for the care of children.

W. Va. Code §§ 48-19-101(2) & (3).  Inasmuch as the respondents in this case are all suing on behalf of their respective children, we conclude that the children are members of a class for whose benefit § 48-19-103(f) was enacted.[9]

_____

[9]Were the respondents suing on their own behalf the result would be different, as nothing in West Virginia Code § 48-19-101 indicates that the Legislature enacted child support enforcement laws for the purpose of benefitting child support obligees in their own right.  To the contrary, it is clear that the Legislature intended the laws primarily to benefit minor children, and secondarily to benefit the State, because state resources are often

11

With respect to the second prong of the *Hurley* test, "a determination must be made as to whether the Legislature intended a private cause of action to exist." *Hill v. Stowers*, 224 W. Va. 51, 59, 680 S.E.2d 66 (2009). In this regard, we need not speculate: the Legislature has clearly expressed an intention to the contrary. West Virginia Code § 48-18-110(b) (2009) provides:

> An attorney employed by the Bureau for Child Support Enforcement or employed by a person or agency or entity pursuant to a contract with the Bureau for Child Support Enforcement *represents the interest of the State or the bureau and not the interest of any other party*. The Bureau for Child Support Enforcement shall, at the time an application for child support services is made, inform the applicant that any attorney who provides services for the Bureau for Child Support Enforcement is the attorney for the State of West Virginia and that *the attorney providing those services does not provide legal representation to the applicant*.

(Emphasis supplied.)

Notwithstanding this clear expression of legislative intent, the respondents argue that because this Court has recognized a private cause of action for child support obligors for repayment of funds improperly withheld by the BCSE, *Shaffer*, 215 W. Va. at 68-69, 593 S.E.2d at 639-40 (2003), there must *a fortiori* be a private cause of action for child support obligees for negligent failure to collect child support by the BCSE. We disagree. The

necessary for the support of single parent families struggling to make ends meet in the absence of support from a non-custodial parent.

plaintiff obligors in *Shaffer* were proceeding under West Virginia Code § 48-14-407(b)(2002), in which the Legislature specifically directed that "[t]he [West Virginia Support Enforcement] commission shall, by administrative rule, establish procedures for promptly refunding to obligors amounts which have been improperly withheld[.]" Obedient to the statutory command, the Child Advocate Office Policy and Procedural Manual, Section 08010.20.20, effective November 1, 1993, which was incorporated by reference as a legislative rule, required any amount improperly withheld from an obligor's income to be promptly refunded. Reviewing the statute and legislative rule, we found it to be "clear . . . that the Legislature has manifested an intent that the BCSE repay funds which were improperly withheld from an obligor's income." *Shaffer*, 215 W. Va. at 69, 593 S.E.2d at 640.

In the instant case, however, the statute upon which the respondents base their action, West Virginia Code § 48-14-407(b), does not contain any legislative directive for recovery of funds. To the contrary, as set forth above, in West Virginia Code § 48-18-110(b), the Legislature has specifically disavowed the existence of any duty owed to child support obligee-applicants or "any other party" by the State's employees or contractors, thus eliminating one element necessary to the existence of any tort liability. *See Carter v. Monsanto Co.*, 212 W. Va. 732, 737, 575 S.E.2d 342, 347 (2002) ("[b]efore one can recover under a tort theory of liability, he or she must prove each of the four elements of a tort: duty, breach, causation, and damages.").

13

Although we acknowledge that there is surface appeal to the respondents' argument that a remedy available to obligors should also be available to obligees, the argument fails upon closer examination. West Virginia Code § 48-14-407(b) deals with a situation where the State has wrongfully taken money from an obligor. Thus, the cause of action recognized by this Court in *Shaffer* under the statute is in the nature of an "illegal exaction" action, for which the remedy is a refund. *See Eastport S.S. Corp. v. U. S.*, 372 F.2d 1002 (Ct. Cl. 1967).[10] In such situation, the Legislature has specifically directed that the State must provide a refund if the obligee cannot or will not do so.[11] West Virginia Code § 48-19-103(f), in contrast, deals with a situation where the State is providing assistance to one individual, an obligee, in his or her attempt to obtain child support from another individual, an obligor. Where the State is negligent in performing this task, with the result that the obligee's entitlement to support is barred by the statute of limitations, the obligee is not due a *refund* because no money has been "exacted." Rather, the obligee seeks *damages*, as in the instant case, based on "the existence of some money-mandating statute or Constitutional provision." *Usibelli Coal Mine v. U.S.*, 54 Fed.Cl. 373, 376 (2002), *rev'd on other grounds*, *Usibelli Coal Mine, Inc. v. U.S.*, 311 Fed.Appx. 350 (Fed.Cir., June 25, 2008). For purposes

___

[10]An illegal exaction action is one in which "'the Government has the citizen's money in its pocket[,]'" *Eastport*, 372 F.2d at 1007-08 (quoting *Clapp v. U.S.*, 117 F. Supp. 576, 580 (1954), as opposed to one involving a "money-mandating constitutional provision, statute or regulation that has been violated." *Loveladies Harbor, Inc. v. U.S.*, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc).

[11]In *Shaffer*, the obligee had bankrupted the debt owed to the obligor.

of analyzing whether the Legislature intended to give obligees a private cause of action, the distinction between a refund action and an action seeking an award of damages is significant. Here, the obligees' losses directly result from their respective obligors' failure to pay support, and only indirectly from the State's failure to ensure that the obligors do so. With respect to the obligees, the State never illegally exacted any money from anyone, and thus the State has nothing to repay. In these circumstances, there is a rational basis upon which to conclude that a private cause of action by obligees against the State, founded on what is in essence a claim of malpractice, carries a cost to taxpayers that outweighs any benefits to those seeking an award of damages for past harm.

In summary, the Legislature has given no statutory directive that the petitioners establish procedures for payment by the State of child support owed by obligors that has not been reduced to judgment and/or collected by the BCSE. Further, the Legislature has stated, in unequivocal language, that DHHR/BCSE attorneys and agents represent the State, not the child support obligee "or any other party."[12] In so doing, the Legislature has specifically disclaimed the existence of a duty owed by these petitioners *to these respondents*, which sounds the death knell to the respondents' causes of action, all of which sound in tort.[13] In

---

[12]This language is significant in the instant case where the respondent child support obligees sue not on their own behalf, but on behalf of their children.

[13]*See generally State v. Chase Sec., Inc.*, 188 W. Va. 356, 364, 424 S.E.2d 591, 599 (1992) ("the thrust of any attempt to establish liability against a public official is the violation of some duty attendant to the official's office and a resulting harm to the plaintiff.")*; Clark*

15

light of all these factors, this Court can find no indication that the Legislature intended to create a private cause of action based upon alleged failure of the petitioners to discharge any duties imposed on them by West Virginia Code § 48-19-103(f).

With respect to the third prong of the *Hurley* test, this Court does not believe that a private cause of action is consistent with the underlying purposes of the legislative scheme. As noted, the dual purposes of the child support enforcement laws are to protect children, by ensuring that they are financially supported during the period of their minority, and to reduce the financial cost to the State of providing public assistance in situations where an obligor parent is evading his or her responsibility. While a private cause of action may be consistent with the first purpose, at least in theory although not under the facts of this case,[14] it is manifestly inconsistent with the second, because this action will do nothing to reduce the financial cost to this State of providing public assistance funds for the care of children during

---

*v. Dunn*, 195 W. Va. 272, 277, 465 S.E.2d 374, 379 (1995); *Hess v. W. Va. Div. of Corr.*, 227 W. Va. 15, 18, 705 S.E.2d 125, 128 (2010).

[14]As previously noted, a careful review of the allegations in the complaint reveals that with the possible exception of respondent Lori C.'s child, B.C., the respondents' children had all reached the age of majority prior to the filing of the complaint. The underlying support orders were entered in cases bearing civil actions dated 1982 (Kerner), 1996 (Lori C.), 1990 (Danberry), 1987 (Cooper), 1983 (Nash), and 1989 (Roth). Thus, the monies owed to the respondents' children by the respective obligors would be in the nature of damages to compensate them for *past* harm. The statutory goal of protecting the "best interests" of these children is clearly geared to ensuring that the respective obligors provide *present* support to them during their childhood.

their minority.[15]  To the contrary, this action will impose substantial litigation costs and burdens upon the State, irrespective of the existence of any insurance provided by the Board of Risk and Insurance Management.[16]  Finally, the overarching purpose of our child support enforcement laws is to require parents to support the children they have brought into being. When the parents fail to do so, the State provides other forms of support and financial assistance, where needed, to ensure that the children's basic needs are met.  In the absence of a specific legislative directive, this Court sees no principled basis for requiring the State to go one giant step further: to assume liability for paying damages to children, after the fact, for the default of their obligor parents.

With respect to the fourth and final prong of the *Hurley* test, we find that it is not applicable, as nothing at issue in this case intrudes into an area delegated exclusively to the federal government.

Having examined the facts of this case under the applicable test established in *Hurley*,

---

[15]See *infra* note 2 & note 13.  With the possible exception of respondent Lori C., any public assistance provided to the respondents' families as a result of non-support by their obligor parents is an historical fact, not a present concern.

[16]The complaint alleges that damages are sought up to the limits of any applicable insurance and that the State's BRIM policy would cover the claim, thus bringing the case within this Court's holding in *Pittsburgh Elevator Co. v. W. Va. Bd. Of Regents*, 172 W. Va. 743, 310 S.E.2d 675 (1983).  As this claim comes to us on a Rule 12(b)(6) motion, we must assume these allegations to be true.

this Court concludes that the respondents have failed to establish the existence of a private cause of action under the statutory provisions of West Virginia Code § 48-19-103(f). It has long been the law that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). Moreover, with respect to West Virginia Code § 48-18-110(b), it has long been the law that "[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. Pt. 2, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968). In this case, we find that the Legislature intended to insulate the state actors from liability under the statute upon which respondents base their claims by enacting West Virginia Code § 48-18-110(b), which clearly states that any duty imposed on the state actors to collect child support runs to "the State or the bureau [BCSE]," not to the support obligees or their children.

This case presents difficult policy issues. The respondents make a compelling argument with respect to the respondents' children, whose obligor parents failed them in the first instance and who were thereafter, accepting the allegations in the complaint as true, failed by the petitioners as well. These children are the real, albeit silent, parties in interest in this case. However, the case rises or falls on a single question: whether there exists a private cause of action against the State for an alleged violation of West Virginia Code § 48-19-103(f). The Legislature has clearly expressed an intent that this question be answered in the negative, and this Court must give effect to such expression of intent. Where, as here, the issue before us is

18

purely one of statutory construction,[17] we reaffirm our longstanding principle that

> [d]espite the underlying merit to [the petitioner's] request, we are bound to refrain from making such policy determinations since "'[i]t is not the province of the courts to make or supervise legislation, and a statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled, or rewritten[.]'" *State v. Richards*, 206 W. Va. 573, 577, 526 S.E.2d 539, 543 (1999), quoting *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W. Va. 137, 145, 107 S.E.2d 353, 358 (1959) (citation omitted).

*Arbaugh v. Bd. of Educ.*, 214 W. Va. 677, 683, 591 S.E.2d 235, 241 (2003).

Therefore, after careful consideration of the statute, guided by the principles set forth in our applicable precedents and faithful to our longstanding rules of statutory construction, we hold that child support obligees, either on their own behalf or on behalf of their children, do not have a private cause of action under the provisions of West Virginia Code § 48-19-103(f) (2009) against state entities or their contractors for damages arising from the failure of such entities or contractors to reduce the obligees' respective support arrearages to judgment and/or to renew such judgments, thus causing the obligees' claims to become time-barred.[18]

---

[17]The respondents do not claim that this case presents any constitutional issues, and this Court discerns none.

[18]Inasmuch as we have reversed the circuit court's ruling with respect to the existence of a cause of action, it is unnecessary for this Court to consider the remaining issues raised by the petitioners.

## IV.  CONCLUSION

The judgment of the Circuit Court of Kanawha County is reversed, and this case is remanded for entry of an order dismissing the respondents' complaint.

Reversed and Remanded With Directions.