# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**K. Subramani**
**Plaintiff Below, Petitioner**

**vs) No. 14-0924** (Monongalia County 14-C-35)

**West Virginia University Board of Governors, Michele G.
Wheatley, C.B. Wilson, Eugene V. Cilento, and Brian Woerner**
**Defendants Below, Respondents**

**FILED**

November 20, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner K. Subramani, by counsel Jacques R. Williams, appeals the Circuit Court of Monongalia County's August 14, 2014, order granting respondents' motion to dismiss. Respondents, West Virginia University Board of Governors ("WVBOG"), Michele G. Wheatley, C. B. Wilson, Eugene V. Cilento, and Brian Woerner,[1] by counsel Susan Deniker, filed a response in support of the circuit court's order. Petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

At all times relevant, petitioner was employed as an associate professor in the Lane Department of Computer Science and Electrical Engineering at West Virginia University's ("WVU") Benjamin M. Statler College of Engineering and Mineral Resources ("CEMR"). Petitioner was hired by WVU in August of 2000, as an assistant professor. In 2006, he was promoted to associate professor and granted tenure.

During the 2009-10 annual review process, petitioner made a formal request for promotion to the rank of full professor. As established in WVU's Policies and Procedures for Annual Faculty Evaluation, Promotion and Tenure 2009-10 ("WVU guidelines"), considerations for an award of promotion are addressed through a multi-level evaluation process. The process

---

[1]At the time of the filing of petitioner's underlying compliant, Michele G. Wheatley served as provost of West Virginia University ("WVU"); C.B. Wilson served as associate provost of WVU; Eugene V. Cilento served as dean of the WVU Benjamin M. Statler College of Engineering and Mineral Resources; and Brian Woerner served as chair of the Lane Department of Computer Science and Electrical Engineering within the WVU Benjamin M. Statler College of Engineering and Mineral Resources

1

begins with a review of the request by a department committee of faculty colleagues. A review of the request is then completed by the department chair, following which the request is reviewed by a committee of faculty from the various departments of the college. Finally, the request is reviewed by the dean of the college. In petitioner's case, all four levels of review recommended that his application for promotion to full professor be denied.

WVU guidelines provided that "[i]n order to be recommended for a promotion, a tenured or tenure-track faculty member normally will be expected to demonstrate significant contributions in two of the following areas: teaching in the classroom or other setting, research[,] and service." These guidelines define "significant contributions" as "those which meet or exceed those of peers recently … achieving similar promotion and/or tenure who are respected for their contributions in teaching at [WVU]."

Similarly, the WVU CEMR Criteria for Promotion and Tenure required that, in order to qualify for promotion to the rank of professor, a candidate must show a sustained record of significant contributions in teaching and research. Evidence of significant contributions in teaching "include[d] documentation of effective instruction as measured by student feedback." During the review of petitioner's application for promotion to full professor, petitioner's department chair concluded that petitioner's teaching accomplishments, since his last promotion, did not compare favorably with recently promoted colleagues within the department and college."[2]

On May 19, 2010, petitioner filed a grievance against the WVUBOG with the West Virginia Public Employees Grievance Board,[3] in which he alleged that respondents violated WVU's policies in failing to promote him to the rank of full professor. Specifically, petitioner argued that respondents improperly used student evaluations to rate his teaching performance. Petitioner further asserted that he was the victim of reprisal, discrimination, and harassment because he filed prior grievances concerning his employment at WVU.

---

[2]Specifically, petitioner's department chair noted that (1) petitioner's student evaluation scores were below the averages of the scores of his recently promoted peers; (2) written student comments indicated recurring issues in petitioner's classroom interactions with students, even from students who praised other aspects of petitioner's teaching style (these comments described petitioner as condescending, arrogant, degrading, elitist, spiteful, conceited, insulting, and rude); and (3) the number of graduate students petitioner advised and had brought to completion of their degree was below the similar number for all recently promoted peers.

[3]West Virginia Code §§ 6C-2-1 through -8 (collectively known as the West Virginia Public Employees Grievance Procedure ("grievance procedure")) provides the resolution procedure for grievances raised by public employees of the State of West Virginia. The grievance procedure consists of three levels: level one is a hearing with the entity's chief grievance administrator; level two is voluntary mediation; and level three is a hearing in front of an administrative law judge. Either party may appeal a level three decision to the Circuit Court of Kanawha County.

Following a level one hearing, petitioner's grievance was denied. Petitioner appealed the denial and requested a level two mediation. The parties were unable to resolve the grievance at mediation, and petitioner thereafter requested a level three hearing before an administrative law judge ("ALJ"). The level three hearing was conducted over six days in November of 2010, and concluded on March 18, 2011.

On July 22, 2011, the ALJ denied petitioner's grievance, finding that petitioner's application for promotion was properly reviewed using the same evaluative tools and measures utilized for all other members in his department. The ALJ concluded that petitioner's claims of reprisal, harassment, and discrimination were without merit. Petitioner timely appealed the ALJ's decision to the Circuit Court of Kanawha County. On March 31, 2013, the circuit court denied petitioner's appeal and affirmed the ALJ's decision. Petitioner did not appeal the circuit court's order to this Court.

On August 9, 2010, petitioner filed a second grievance against the WVUBOG. In this grievance, petitioner alleged that his department chair failed to properly address a number of petitioner's concerns relating to his evaluations and his promotion and tenure file. In addition, petitioner alleged that he was improperly denied an application for a sabbatical leave of absence. On October 18, 2011, a level one hearing was held before the chief grievance administrator. At the conclusion of the hearing, respondent moved to dismiss petitioner's grievance arguing that it failed to state a claim upon which relief could be granted. The chief grievance administrator granted respondent's motion. Petitioner filed an appeal of the level one decision, and a level two mediation was held. After an unsuccessful mediation, petitioner requested a level three hearing. The day before the scheduled hearing, petitioner voluntarily withdrew his grievance.

On May 20, 2011, petitioner filed a third grievance. This grievance related to a letter that petitioner's department chair placed in petitioner's promotion and tenure file, which stated, in part:

You have elected to challenge the decision of the university with respect to your request for promotion during the 2009-2010 review cycle. As a result of this ongoing challenge, your complete personnel file is in the Provost's office and not available for the present review cycle. After consulting with the Provost's office I have placed only items from the 2010 calendar year into your file. In completing its review for the current cycle, the committee should consider your accomplishments from the 2010 calendar year. The committee should also not draw any conclusions on the outcome of the ongoing proceedings until those proceedings have been completed. …. You have a right to respond to this note and any other items in your file and place the response into your personnel file.

As a result of the placement of this letter in his file, petitioner asserted claims of breach of confidentiality, deprivation of due process, discrimination, harassment, and reprisal. A level one hearing was held on June 9, 2011. Petitioner's grievance was denied by decision issued July 29, 2011, in which the chief grievance administrator found that: (1) the letter placed in petitioner's file did not harm petitioner; (2) the evaluation of petitioner's teaching and service contributions was not arbitrary and capricious; and (3) petitioner had not been the victim of

3

harassment, discrimination, or reprisal. Petitioner appealed this decision, and the parties participated in a level two mediation. The mediation was unsuccessful. Petitioner then requested a level three hearing, which was held before an ALJ over two days in December of 2012.

On March 15, 2013, the ALJ issued a ruling denying petitioner's grievance, finding that petitioner's application for promotion had been reviewed using the same evaluative tools and measures utilized for all other members in his department, and thus, was a proper review. The ALJ further ruled that petitioner's claims for breach of confidentiality, reprisal, harassment, and discrimination were without merit.[4] Petitioner did not appeal the ALJ's March 15, 2013, decision to the Circuit Court of Kanawha County.

On November 15, 2011, petitioner filed a four count complaint against respondents in Monongalia County Circuit Court. In his complaint, petitioner alleged: (1) breach of contract (for respondents' alleged failure to review petitioner's request for promotion in accordance with WVU's policies and procedures); (2) breach of the covenant of good faith and fair dealing (for respondents' alleged failure to provide petitioner with steps to correct his job performance); (3) violation of due process (for placement of documents in petitioner's promotion and tenure file without his knowledge); and (4) violation of West Virginia Code § 6C-2-1 (reprisal against petitioner related to his filing of grievances against respondents). In answer to petitioner's complaint, respondents filed a motion to dismiss. On June 22, 2012, the circuit court granted respondents' motion to dismiss, finding that the circuit court did not have jurisdiction to hear petitioner's claims because petitioner had not exhausted his administrative remedies. Petitioner did not appeal the circuit court's dismissal of his claims to this Court.

On January 15, 2014, petitioner filed another civil action in the Circuit Court of Monongalia County against respondents. In his two count complaint, petitioner alleged: (1) a violation of due process for the placement of certain documents in his faculty file, and for the manner in which he was evaluated in the 2009-10 promotion cycle; and (2) a violation of the West Virginia Public Employees Grievance Board Statute, West Virginia Code §§ 6C-2-1 through -8, (alleging that petitioner did not receive a full, fair, and impartial review of his file). On March 24, 2014, respondents filed a motion to dismiss petitioner's complaint. In their motion, respondents alleged that petitioner failed to file his lawsuit within the applicable statute of limitations and, further, that there was no private cause of action for count II of petitioner's complaint.

After hearing the arguments of counsel, the circuit court entered, on August 14, 2014, its

---

[4]The ALJ rejected petitioner's claims that the department chair did not maintain the confidentiality of the grievance procedure when he placed the December 29, 2010, letter in petitioner's temporary personnel file. The ALJ found petitioner's position disingenuous because petitioner asked the department chair to place the letter in his file and had, himself, written the following statement to reviewers in his Faculty Productivity Report: "I am currently grieving this matter; depending on the outcome of the grievance hearing, the matter could be litigated in district court."

order granting respondents' motion to dismiss. The circuit court ruled that petitioner failed to state a claim upon which relief could be granted as the grievance procedure did not allow for a private cause of action. The circuit court reasoned that petitioner was a member of the class for whose benefit the grievance procedure was enacted, and permitting him to pursue a private cause of action against respondents, outside of the grievance procedure, was contrary to legislative intent.[5] It is from the circuit court's August 14, 2014, order that petitioner now appeals.

"Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*" Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick*, 194 W.Va. 770, 461 S.E.2d 516 (1995). Moreover, "[t]he trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, [78 S.Ct. 99, 2 L.E.2d 80] (1957)." Syl. Pt. 3, *Chapman v. Kane Transfer Co., Inc.*, 160 W.Va. 530, 236 S.E.2d 207 (1977). With these principles in mind, we turn to a consideration of each of petitioner's arguments on appeal.

On appeal, petitioner raises three assignments of error. First, petitioner alleges that the circuit court erred in ruling that his only remedy for a due process violation was to pursue a grievance under the grievance procedure. Second, petitioner argues that prior unsuccessful grievance procedures do not prevent him from pursuing relief in circuit court. Third, petitioner contends that the circuit court erred in ruling that he could not pursue a private cause of action against respondents for discrimination, harassment, and reprisal.

In the instant case, the circuit court granted respondents' motion to dismiss petitioner's due process violation claims, finding that petitioner's claims were within the jurisdictional scope of the grievance procedure. In his first assignment of error, petitioner argues that he had a property interest in his employment, which entitled him to constitutional due process protections, in addition to his remedies under the grievance procedure. Respondents counter that the grievance procedure, with the provision of an impartial ALJ to hear grievances (and with a grievant's ability to enforce and appeal an ALJ's decision), ensure that the procedural and substantive due process rights of grievants are protected.[6] Respondents contend that, through the grievance procedure, petitioner was provided an adequate form and opportunity to raise any due process violations petitioner perceived were committed by respondents. We agree.

Under the grievance procedure, a grievance is defined as

a claim by any employee alleging a violation, a misapplication or a

---

[5]We note that the circuit court's August 14, 2014, order does not address respondents' arguments that petitioner's claims were improper because they were filed outside of the time frame provided by the applicable statute of limitations. However, as neither party has raised this issue on appeal, we will not address the same herein.

[6]*See* W.Va. Code §§ 6C-2-4 and -5.

misinterpretation of the statutes, policies, rules or written agreements applicable to the employee including: (i) Any violation, misapplication or misinterpretation regarding compensation, hours, terms and conditions of employment, employment status or discrimination; (ii) Any discriminatory or otherwise aggrieved application of unwritten policies or practices of his or her employer; (iii) Any specifically identified incident of harassment; (iv) Any specifically identified incident of favoritism; of (v) any action, policy or practice constituting a substantial detriment to or interference with the effective job performance of the employee or the health and safety of the employee.

W.Va. Code § 6C-2-2(i)(1).

In West Virginia Code § 6C-2-1, the Legislature made clear its intention to resolve grievances through the statutorily provided procedure so that redress may be had in a "fair, efficient, cost-effective and consistent manner." Further, in West Virginia Code § 18B-2A-4(l), in pertinent part, the Legislature mandated that the "procedure established in . . . [§§ 6C-2-1 et seq.], . . . is the exclusive mechanism for hearing by prospective employee grievances and appeals" for the WVUBOG. In syllabus point two of *State ex rel, Smith v. Thornsbury*, 214 W.Va. 228, 588 S.E.2d 217 (2003) we noted that this Court has long held that

> """"[t]he general rule is that where an administrative remedy is provided by statute or by rules and regulations having the force and effect of law, relief must be sought from the administrative body, and such remedy must be exhausted before the court will act.' Syl. pt. 1, *Daurelle v. Traders Federal Savings & Loan Association*, 143 W.Va. 674, 104 S.E.2d 320 (1958)." Syl. Pt. 1, *Cowie v. Roberts*, 173 W.Va. 64, 312 S.E.2d 35 (1984). Syllabus point 10, *State ex rel. Miller v. Reed*, 203 W.Va. 673, 510 S.E.2d 507 1998). Syl. Pt. 7, *Expedited Transportation Systems, Inc., v. Vieweg*, 207 W.Va. 90, 529 S.E.2d 110 (2000).

An examination of the record before us reveals that petitioner filed three separate grievances under the grievance procedure against respondent, each in some way relating to the denial of his request for promotion and including claims that he was the victim of reprisal, discrimination, and harassment – the very issues that were also the basis of his January 15, 2014, complaint. However, despite filing these grievances against respondents, petitioner saw none of them through to conclusion of the process provided by the grievance procedure. With regard to his first grievance, petitioner chose not to appeal the circuit court's decision affirming the ALJ's ruling. Petitioner withdrew his second grievance the day before the level three hearing. As for his third grievance, petitioner did not appeal the ALJ's decision to circuit court.[7] As such, we agree

---

[7]We note that at each of the hearings before the chief grievance administrator and/or ALJ on each of his grievances, petitioner was provided the opportunity to present testimony and documentary evidence, and to challenge the testimony and evidence proffered by respondent. We further note that during the majority of these grievance proceedings, petitioner was represented by counsel.

with the circuit court's conclusion that petitioner cannot now raise a due process violation claim in circuit court related to the same events because the circuit court is not the proper forum for challenging routine personnel decisions based on alleged violations of respondents' internal guidelines and the grievance procedure. The proper procedure for petitioner to address his grievances was through the grievance procedure. Thus, based upon the facts before us and the circumstances of this case, we find that the circuit court did not err in dismissing petitioner's alleged due process violation claims against respondents.

In his second assignment of error, petitioner contends that prior unsuccessful grievance procedures do not prevent him from pursuing relief in circuit court, and, accordingly, the circuit court erred in dismissing his claims based upon its finding that petitioner did not exhaust his administrative remedies. As noted above, it is undisputed that petitioner failed to exhaust his administrative remedies before filing a lawsuit against respondents in January of 2014. While there are some exceptions to the rule of exhaustion of administrative remedies, none appear to be applicable here, nor have any such exceptions been asserted in this case. *See* Syl. Pt. 1, *State ex rel. Bd. of Educ. of Kanawha County v. Casey*, 176 W.Va. 733, 349 S.E.2d 436 (1986) (resort to available procedures would be an exercise in futility); *State ex rel Arnold v. Egnor*, 166 W.Va. 411, 421, 275 S.E.2d 15, 22 (1981) (lack of agency jurisdiction or the constitutionality of the underling agency statute); Syl. Pt. 2, *Daurelle v. Traders Fed. Sav. & Loan Assn.*, 143 W.Va. 674, 104 S.E.2d 320 (1958) (no administrative remedy provided).

In support of his argument, petitioner cites *Weimer v. Sanders*, 232 W.Va. 367, 752 S.E.2d 398 (2013) and *Vest v. Bd of Education of the County of Nicholas*, 193 W.Va. 222, 455 S.E.2d 781 (1995), in which this Court ruled that the filing of a grievance by a public employee is a permissive, but not exclusive remedy, when the employee's claims relate to violations of the West Virginia Human Rights Act.[8] Based upon *Weimer* and *Vest*, petitioner contends that he was not required to pursue his claims herein under the grievance procedure, and was free to turn to the civil justice system for relief. Respondents argue that petitioners' reliance on *Vest* and *Weimer* is misplaced. Petitioner herein, unlike the petitioners in *Vest* and *Weimer*, did not assert any claims under the West Virginia Human Rights Act; rather, petitioner's claims herein were for due process violations, discrimination, harassment, and reprisal, all of which were within the express jurisdiction of the grievance procedure. We agree.

In *Vest* we discussed the differences in pursuing claims under the West Virginia Human Rights Act and the grievance procedure, and particularly noted that pursuit of grievances under the latter does not give " . . . employees the option of skipping the administrative process and pursuing their claims *de novo* in circuit court where jury trials and the full array of legal and equitable remedies are obtainable." 193 W.Va. at 227, 455 S.E.2d at 786. Accordingly, we find no error in the circuit court's dismissal of petitioner's claims for failure to exhaust his administrative remedies.

Finally, petitioner argues that the circuit court erred in ruling that he could not pursue a

---

[8]W.Va. Code §§ 5-11-1 through -21.

7

private cause of action against respondents for discrimination, harassment, and reprisal. To determine whether a private cause of action exists based upon a violation of statute, this Court set forth a four-part test in *Hurley v. Allied Chemical Corp.*, 164 W.Va. 268, 262 S.E.2d 757 (1980).[9] In syllabus point one of *Hurley*, we held:

> [t]he following is the appropriate test to determine when a State statute gives rise by implication to a private cause of action: (1) the plaintiff must be a member of the class for whose benefit the statute was enacted; (2) consideration must be given to legislative intent, express or implied, to determine whether a private cause of action was intended; (3) an analysis must be made of whether a private cause of action is consistent with the underlying purposes of the legislative scheme; and (4) such private cause of action must not intrude into an area delegated exclusively to the federal government.

164 W.Va. at 268, 262 S.E.2d at 758.

Applying the *Hurley* test to the case at hand, the first consideration is whether petitioner was within the class of persons that West Virginia Code §§ 6C-2-1 through -8, was meant to benefit. We find that petitioner was an employee, as defined by West Virginia Code § 6C-2-2(e)(1). We further find that respondents were employers, as defined by West Virginia Code § 6C-2-2(g). Thus, we hold that petitioner was an intended beneficiary of the statute and readily satisfies the first prong of the *Hurley* test. We can also readily dispose of the fourth element of the Hurley test, as a private cause of action would not intrude into an area delegated exclusively to the federal government.

The second prong of the *Hurley* test requires that "a determination … be made as to whether the Legislature intended a private cause of action to exist." *Hill v. Stowers*, 224 W.Va. 51, 59, 680 S.E.2d 66, 74 (2009). Under the third prong of the *Hurley* test, a private cause of action must be consistent with the underlying purposes of the legislative scheme. In addressing these factors, the circuit court reasoned that the legislature clearly stated the purpose of the grievance procedure was to resolve grievances in a fair, efficient, cost-effective, and consistent manner.[10] Taking this explicit purpose into consideration, the circuit court found that permitting a public employee to file a private cause of action under the circumstances present herein would

---

[9]In *Fucillio v. Kerner ex rel. J.B.*, 231 W.Va. 195, 200, 744 S.E.2d 305, 310 (2013), we observed that

> [i]n the thirty-three years since *Hurley* was decided, this Court has continued to utilize the four-part *Hurley* test as the yardstick for determining whether a statute gives rise to a private cause of action. Although all prongs of the test have weight and none, standing alone, is determinative, our cases demonstrate that legislative intent is the polar star in determining the existence of a private cause of action.

[10] W.Va. Code §§ 6C-2-1(a) and (b).

8

defeat the legislature's intent. We agree.

West Virginia Code § 6C-2-1(a) explicitly notes the purpose of the grievance procedure as a mechanism to "provide a procedure for the resolution of employment grievances raised by the public employees of the State of West Virginia." The legislature continued, in West Virginia Code § 6C-2-1(b), in pertinent part, to further define the purpose of the grievance procedure as a means to resolve "grievances in a fair, efficient, cost-effective and consistent manner . . . ." Notwithstanding this clear expression of legislative intent, petitioner argues that the circuit court went beyond the scope of *Hurley* in finding that the absence of language in the grievance procedure specifically creating a private cause of action for discrimination, harassment, and reprisal was dispositive as to legislative intent. We disagree. Under the grievance procedure, the legislature has given no statutory directive to create a private cause of action. Instead, the legislature explicitly stated the purpose of the grievance procedure, which did not include the creation of private causes of action. Accordingly, under these circumstances, we cannot conclude that the legislature intended that employee grievances, such as those instituted by petitioner, would give rise to a private cause of action.

As for the third factor of *Hurley*, petitioner alleges that the *Hurley* court endorsed the premise that "an implied cause of action was best suited to redress isolated claims of discrimination and therefore would not frustrate the underlying purpose of the legislative scheme." 164 W.Va. at 276, 262 S.E.2d at 762. In filing his lawsuit against respondents, petitioner contends that he was only trying to redress his isolated claims for discrimination, harassment, and reprisal. We disagree with petitioner's reasoning. Under the limited and particular circumstances of this case, we believe that permitting petitioner to maintain a private cause of action under the grievance procedure for claims of discrimination, harassment, and reprisal, would be inconsistent with the underlying purposes of the grievance procedure, and would only serve to usurp the legislative scheme. Accordingly, we find no error in the circuit court's ruling that petitioner could not pursue a private cause of action against respondents for discrimination, harassment, and reprisal.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 20, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

9